UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| REBECCA LYNN SHELTON, <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. 2:18-cv-00093 <br><br> Chief Judge Waverly D. Crenshaw, Jr. <br> Magistrate Judge Alistair E. Newbern |

To:  The Honorable Waverly D. Crenshaw, Jr., Chief District Judge

## **REPORT AND RECOMMENDATION**

Plaintiff Rebecca Lynn Shelton filed this action under 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of the Social Security Administration (SSA) denying her application for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401–34, 1381–83f. (Doc. No. 1.) The Court referred this action to the Magistrate Judge to dispose or recommend disposition of any pretrial motions. (Doc. No. 5.) Before the Court is Shelton's motion for judgment on the administrative record requesting reversal of the ALJ's decision and remand for rehearing. (Doc. No. 19.) The Commissioner has responded in opposition (Doc. No. 22), and Shelton has filed a reply (Doc. No. 24). Having considered the parties' filings and the administrative record as a whole, and for the reasons that follow, the Magistrate Judge will recommend that Shelton's motion be denied and that the Commissioner's final decision be affirmed.

## I. Background

### A. Shelton's Application for Disability Insurance Benefits and Supplemental Security Income

Shelton applied for DIB and SSI on September 14, 2012. (AR 312–19.[1]) She alleged that she had been disabled and unable to work since April 1, 2005, as a result of depression, post-traumatic stress disorder (PTSD), bipolar disorder, and anxiety. (AR 103, 116.) The Commissioner denied Shelton's applications initially and on reconsideration. (AR 101–02, 129–30.) Shelton requested a hearing before an administrative law judge (ALJ) and amended her alleged onset date to December 18, 2012. (AR 206–10, 342.) ALJ George L. Evans, III, held a hearing on January 23, 2015, and issued an unfavorable written decision denying Shelton's DIB and SSI claims on March 6, 2015. (AR 45–60, 169–81.) ALJ Evans's decision afforded "no weight" to an opinion from consulting examiner Terrence Leveck, M.D., who examined Shelton in April 2013, and who stated that she could only lift and carry up to ten pounds occasionally. (AR 177.)

The Social Security Appeals Council granted Shelton's request for review, vacated ALJ Evans's decision, and remanded Shelton's claims for further administrative proceedings. (AR 188–90.) Among other things, the Appeals Council found that ALJ Evans's written decision "did not adequately address the medical opinion of consultative examiner Terrence Leveck, M.D." because the written opinion failed to "specifically identify what evidence in the record [was] inconsistent with Dr. Leveck's lifting and carrying assessment." (AR 188.) The Appeals Council ordered that Shelton's treatment records be updated on remand. (AR 189.) In accordance with the Appeals Council's order, ALJ K. Dickson Grissom obtained updated treatment records and held two further

---

[1] The Transcript of the Administrative Record (Doc. No. 15) is referenced herein by the abbreviation "AR." All page numbers cited in the AR refer to the Bates stamp at the bottom right corner of each page.

hearings regarding Shelton's claims. (AR 61–100.) Shelton appeared with counsel and testified. (AR 66–75, 84–94.) ALJ Grissom also heard testimony from Jane Hall, a vocational expert. (AR 95–99.)

### B. ALJ Grissom's Findings

On March 5, 2018, ALJ Grissom issued a written decision finding that Shelton was not disabled within the meaning of the Social Security Act and applicable regulations and denying her claims for DIB and SSI. (AR 16–25.) ALJ Grissom made the following enumerated findings:

1. The claimant meets the insured status requirements for the Social Security Act through December 31, 2012.

2. The claimant has not engaged in substantial gainful activity since December 18, 2012, the amended alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease, bipolar disorder, depression, post-traumatic stress disorder (PTSD), cannabis abuse (20 CFR 404.1520(c) and 416.920(c)).

\* \* \*

4. The claimant does not have any impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

\* \* \*

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she is limited to no more than occasional changes in the work setting and no more than occasional interaction with the public, coworkers, and supervisors.

\* \* \*

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

\* \* \*

7. The claimant was born on June 10, 1978 and was 34 years old, which is defined as a younger individual age 18–49, on the amended alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

* * *

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 18, 2012, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(AR 19–25.)

In formulating Shelton's residual functional capacity (RFC), ALJ Grissom gave "little weight" to the opinions of Dr. Leveck, who examined Shelton again in 2016 and completed a new medical source statement regarding her functional limitations, and "some weight" to an opinion from consulting psychologist Mark A. Loftis, Ph.D., who examined Shelton in 2012. (AR 23.) The Appeals Council denied Shelton's request for review on August 27, 2018, making ALJ Grissom's decision the final decision of the Commissioner. (AR 1–5.)

### C. Appeal Under 42 U.S.C. § 405(g)

Shelton filed this action for review of ALJ Grissom's decision on October 29, 2018 (Doc. No. 1), and the Court has jurisdiction under 42 U.S.C. § 405(g). Shelton argues that remand is warranted because ALJ Grissom failed to properly weigh Dr. Leveck's 2013 and 2016 opinions and a 2012 opinion from Dr. Loftis—all completed after examinations—and, instead, gave greater weight to nonexamining sources. (Doc. No. 19-1.) The Commissioner responds that ALJ Grissom

followed applicable regulations in evaluating Dr. Leveck's and Dr. Loftis's opinions and that ALJ Grissom's decision is supported by substantial evidence. (Doc. No. 22.) Shelton's reply further criticizes ALJ Grissom's analysis of Dr. Leveck's opinions. (Doc. No. 24.)

### D. Review of the Record

ALJ Grissom and the parties have thoroughly described and discussed the medical and testimonial evidence in the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## II. Legal Standards

### A. Standard of Review

This Court's review of an ALJ's decision is limited to determining (1) whether the ALJ's findings are supported by substantial evidence and (2) whether the ALJ applied the correct legal standards. *See* 42 U.S.C. § 405(g); *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405–06 (6th Cir. 2009)). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (alteration in original) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence is less than a preponderance but "more than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*; *see also Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (same). Further, "[t]he Social Security Administration has established rules for how an ALJ must evaluate a disability claim and has made promises to disability applicants as to how their claims and medical evidence will be reviewed." *Gentry*, 741 F.3d at 723. Where an ALJ fails to follow those rules or regulations, "we find a lack of substantial evidence, 'even where the

conclusion of the ALJ may be justified based upon the record.'" *Miller*, 811 F.3d at 833 (quoting *Gentry*, 741 F.3d at 722).

### B. Determining Disability at the Administrative Level

DIB and SSI benefits are available to individuals who are disabled, which is defined in this context as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) (explaining that this definition applies in the DIB and SSI contexts). While the rules governing DIB and SSI define "disability" in the same way, entitlement to one benefit does not necessarily entail entitlement to the other. Title II of the Social Security Act, which governs DIB, is an insurance program that "provides old-age, survivor, and disability benefits to insured individuals irrespective of financial need." *Bowen v. Galbreath*, 485 U.S. 74, 75 (1988). To receive DIB, Shelton must establish that she had a disability on or before the last date she was eligible for insurance under Title II, which is determined based on her earnings record. *See* 42 U.S.C. § 423(a)(1)(A), (c)(1); 20 C.F.R. § 404.130. Title XVI, on the other hand, "is a welfare program . . . [that] provides SSI benefits to financially needy individuals who are aged, blind, or disabled regardless of their insured status." *Bowen*, 485 U.S. at 75. To receive SSI, Shelton must show that she was disabled while her application was pending. *See* 20 C.F.R. §§ 416.330, 416.335.

ALJs must employ a "five-step sequential evaluation process" to determine whether a claimant is disabled, proceeding through each step until a determination can be reached. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). For purposes of this case, the regulations governing disability determination for DIB and SSI benefits are identical, aside from the requirement that Shelton show disability before her last insured date to receive DIB. *See Colvin*, 475 F.3d at 730

(citing 20 C.F.R. §§ 404.1520, 416.920). At step one, the ALJ considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). "[I]f the claimant is performing substantial gainful activity, then the claimant is not disabled." *Miller*, 811 F.3d at 834 n.6. At step two, the ALJ determines whether the claimant suffers from "a severe medically determinable physical or mental impairment" or "combination of impairments" that meets the 12-month durational requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "If the claimant does not have a severe impairment or combination of impairments [that meets the durational requirement], then the claimant is not disabled." *Miller*, 811 F.3d at 834 n.6. At step three, the ALJ considers whether the claimant's medical impairment or impairments appear on a list maintained by the Social Security Administration that "identifies and defines impairments that are of sufficient severity as to prevent any gainful activity." *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); *see* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). "If the claimant's impairment meets or equals one of the listings, then the ALJ will find the claimant disabled." *Miller*, 811 F.3d at 834 n.6. If not, the ALJ proceeds to step four. *Combs*, 459 F.3d at 643; *see also Walker v. Berryhill*, No. 3:17-1231, 2017 WL 6492621, at *3 (M.D. Tenn. Dec. 19, 2017) (explaining that "[a] claimant is not required to show the existence of a listed impairment in order to be found disabled, but such showing results in an automatic finding of disability and ends the inquiry"), *report and recommendation adopted by* 2018 WL 305748 (M.D. Tenn. Jan. 5, 2018).

At step four, the ALJ evaluates the claimant's past relevant work and "'residual functional capacity,' defined as 'the most [the claimant] can still do despite [her] limitations.'" *Combs*, 459 F.3d at 643 (alterations in original) (quoting 20 C.F.R. § 404.1545(a)(1)); *see* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Past work is relevant to this analysis if the claimant performed the work within the past 15 years, the work qualifies as substantial gainful activity, and

7

the work lasted long enough for the claimant to learn how to do it. 20 C.F.R. §§ 404.1560(b), 416.960(b). If the claimant's residual functional capacity (RFC) permits her to perform past relevant work, she is not disabled. *Combs*, 459 F.3d at 643. If a claimant cannot perform past relevant work, the ALJ proceeds to step five and determines whether, "in light of their residual functional capacity, age, education, and work experience," a claimant can perform other substantial gainful employment. *Id.* While the claimant bears the burden of proof during the first four steps, at step five the burden shifts to the Commissioner to "identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity and vocational profile." *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011). "Claimants who can perform such work are not disabled." *Combs*, 459 F.3d at 643; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

**III.     Analysis**

Shelton argues that ALJ Grissom should have afforded more weight to Dr. Leveck's and Dr. Loftis's opinions because those doctors examined her, unlike other opinions in the record that were given by sources who only reviewed her medical records. (Doc. No. 19-1.) SSA regulations provide that the agency will "[g]enerally[ ] . . . give more weight to the medical opinion of a source who has examined [the claimant] than to a medical opinion of a medical source who has not examined [the claimant]." 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1). This general principle, however, is subject to exception, and, in some cases, an ALJ may properly afford greater weight to a nonexamining source. *See Miller*, 811 F.3d at 834 ("[U]nder certain circumstances, an ALJ may assign greater weight to a [nonexamining] state agency consultant's opinion than to that of a treating or examining source." (citing SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996)); *Blakley*, 581 F.3d at 409 (same).

8

The record shows that Dr. Leveck and Dr. Loftis examined Shelton for the purpose of formulating their opinions in this case; however, it is undisputed that neither qualifies as a "treating source" under SSA regulations.[2] Unlike treating source opinions, examining nontreating source opinions "are never assessed for 'controlling weight.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). Instead, "the ALJ should consider factors including the length and nature of the treatment relationship, the evidence that the physician offered in support of her opinion, how consistent the opinion is with the record as a whole, and whether the physician was practicing in her specialty." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010); *see also Gayheart*, 710 F.3d at 376; 20 C.F.R. §§ 404.1527(c), 416.927(c). While the ultimate weight an ALJ affords an examining nontreating source's opinion must be supported by substantial evidence, there is no requirement that the ALJ provide "good reasons" for this determination—that "requirement only applies to *treating* sources." *Ealy*, 594 F.3d at 514 (emphasis in original).

Here, substantial evidence supports ALJ Grissom's decisions to afford Dr. Leveck's opinions little weight and Dr. Loftis's opinion some weight.

### A. ALJ Grissom's Assessment of Dr. Leveck's Consulting Examinations and Medical Source Statement

#### 1. Dr. Leveck's Findings and Opinions

Dr. Leveck examined Shelton twice in connection with her DIB and SSI applications—first on April 24, 2013, and again on August 11, 2016. (AR 906–09, 1268–1272.) Following the

---

[2] A "[t]reating source" is an "acceptable medical source who provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). The SSA "will not consider an acceptable medical source to be [a claimant's] treating source if [the treatment] relationship . . . [is] based . . . solely on [the claimant's] need to obtain a report in support of [the claimant's] claim for disability." *Id.*

August 2016 exam, Dr. Leveck also completed a medical source statement describing Shelton's ability to do work-related activities. (AR 1273–78.)

At the 2013 examination, Shelton reported pain "in her upper and lower back with numbness in her lower extremities, all of which is increase[d] by walking, sitting and standing for . . . long periods of time." (AR 907.) She also informed Dr. Leveck that she suffered from "[b]ipolar disorder [and] post[-]traumatic stress disorder." (*Id.*) Dr. Leveck noted that Shelton was "[a]lert and in no acute distress" and that she gave "reasonable effort to the evaluation." (AR 908.) "Strength testing of the grips, wrists, and elbows was normal[,]" and "[t]ouch sensation was normal in the hands and ankles." (*Id.*) Regarding Shelton's musculoskeletal system, Dr. Leveck found that

> [c]ervical flexion was normal with extension limited to 50 degrees. Lateral flexion was limited to 40 degrees bilaterally and rotation was limited to 60 degrees bilaterally. Shoulder forward elevation was normal on the left and limited to 130 degrees on the right, abduction was normal on the left and limited to 90 degrees on the right. She had full internal rotation bilaterally with external rotation being normal on the left and limited to 70 degrees on the right. She had full active range of motion of the digits of both hands, wrists and elbows. Active ankle dorsiflexion and plantar flexion were normal bilaterally. She had full flexion and extension passively on both knees. Hip straight leg raising were negative bilaterally. She had full flexion, adduction, abduction, and internal and external rotation of both hips. Thoracolumbar spine flexion was limited to 80 degrees and she placed her hands on anterior thighs to perform this maneuver. Extension was limited to 50 degrees and lateral flexion was 20 degrees bilaterally.
>
> Station and gait were normal. She performed tandem gait well but had moderate difficulty with heel and toe walk. She was able to stand independently on both lower extremities and squat two-thirds of the way to the floor.

(AR 909.) Based on this examination, Dr. Leveck diagnosed Shelton with "[m]usculoskeletal low back pain" and "[b]ipolar and post[-]traumatic stress disorder." (*Id.*) He stated that "[s]he would be able to sit for seven hours out of eight[,] . . . stand and walk for seven hours out of eight[,] and . . . lift and carry 10 pounds occasionally" during that seven-hour period. (*Id.*)

At the 2016 examination, Dr. Leveck reviewed a case summary describing X-rays of Shelton's thoracic, lumbosacral, and cervical spine and MRIs of her lumbar and cervical spine, all

taken in 2012. (AR 1269.) Shelton reported to Dr. Leveck that she was experiencing "constant dull low back pain" with an intensity of "8 on a scale of 0 to 10." (*Id.*) "The pain is exacerbated by prolonged sitting and weightbearing[,]" and Shelton experienced "[n]o relief with oral steroids" or with "800 mg [of] ibuprofen three times a day . . . ." (*Id.*) She reported constant, intense pain in her neck that was "worse with range of motion of her cervical spine." (*Id.*) Dr. Leveck noted that "[r]aising her arms causes pain in her upper arms" but stated that there was "[n]o numbness or weakness of the upper extremities." (*Id.*) Shelton also reported a "[t]hree-month history of pain in [her] right knee without acute injury." (AR 1270.)

> The results of Leveck's 2016 examination, in relevant part, are as follows:
>
> GENERAL: Alert and in no acute distress, moderately obese, moves readily between the chair and the table, well kempt and gives good effort to the evaluation.
>
> NEUROLOGIC: Mental status normal and flat affect. Cranial nerves II through XII grossly normal. Strength testing normal in her grips pinch strength bilaterally. Normal strength to the wrists, elbows, ankles, and knees. Normal touch sensation of hands and ankles. Romberg's testing negative. Deep tendon reflexes are absent at the knees and l+ at the ankles.
>
> MUSCULOSKELETAL: Cervical spine flexion 45 degrees, extension 50 degrees, rotation 50 degrees right and 70 degrees left, and lateral flexion 10 degrees bilaterally. Mild distress with lateral flexion.
>
> Shoulder forward elevation and abduction 100 degrees right and 110 degrees left, normal internal rotation, and external rotation 60 degrees and 70 degrees left.
>
> Inspection of the hands reveals amputation through the DIP joint of the right index finger. Full range of motion of the digits of both hands and readily approximately thumbs to fingertips bilaterally. Wrist flexion and extension 40 degrees bilaterally. Full flexion and extension of both elbows. Full pronation bilaterally. Supination 50 degrees bilaterally.
>
> Ankle dorsiflexion 0 degrees bilaterally with full plantar flexion bilaterally.
>
> Active flexion of both knees 120 degrees with moderate pain with flexion of the right knee. No crepitus. Mild pain of the right knee with full extension and has full extension of the left knee.

> Hip straight leg raising negative bilaterally in the supine and sitting position. Active hip range of motion equal bilaterally with flexion 80 degrees, adduction 5 degrees, abduction 15 degrees, internal rotation 15 degrees, and external rotation 20 degrees. Right hip maneuvers caused moderate pain in the area of the superior right iliac crest. Similar, but mild pain with left hip maneuvers on the left.
>
> THORACOLUMBAR SPINE: Flexion 55 degrees, extension 5 degrees, and lateral flexion 10 degrees bilaterally with mild distress.
>
> STATION AND GAIT: Normal station and standard gait. She performed tandem gait and toe walk with mild difficulty and heel walk with moderate difficulty. She could stand independently on both lower extremities without difficulty and could squat one-third of the[ ] way to the floor and rise without assistance.

(AR 1271–72.)

Based on his examination and review of her case summary, Dr. Leveck diagnosed Shelton with "[m]usculoskeletal low back pain without physical examination evidence for nerve root or spinal cord compression"; "[m]usculoskeletal cervical spine pain without physical examination evidence for nerve root or spinal cord compression"; and "[a]rthralgia of the right knee with mild symmetrical decreased range of motion and normal standard gait." (AR 1272.) Dr. Leveck concluded that Shelton could sit, stand, and walk "for eight hours out of eight with 5-minute breaks every 60 minutes to accommodate her low back and radicular pain . . . and right knee pain. She could lift and carry 5 pounds frequently and 10 pounds occasionally with limitation due to her back pain." (*Id.*) Dr. Leveck stated that he included "additional assessment" information in his medical source statement. (*Id.*)

Dr. Leveck's medical source statement repeats the lifting and carrying limitations of five pounds frequently and ten pounds occasionally, attributing them to Shelton's "back [and] radicular pain" and "[right] knee pain." (AR 1273.) It also repeats the sitting, standing, and walking limitations of one hour at a time for up to eight hours total, attributed to Shelton's low back pain and right knee pain. (AR 1274.) Dr. Leveck's source statement provides that Shelton can never reach overhead with either hand because of her neck pain and can only occasionally reach in other

12

directions with either hand because of her back pain. (*Id.*) It states that, in Dr. Leveck's medical opinion, these and other limitations first presented in 2008. (AR 1278.)

### 2. ALJ Grissom's Analysis

ALJ Grissom evaluated Dr. Leveck's opinions as follows:

> In the 2013 exam, Dr. Leveck concluded that the claimant could lift 10 pounds; sit for 7 hours; and walk for 7 hours. (Exhibit 12F). In 2016, Dr. Leveck concluded that the claimant could sit for 8 hours with a 5-minute break every 1 hour; stand and walk 8 hours with 5 min break every 1 hour; and lift and carry 5 to 10 pounds. (Exhibit 25F). The undersigned finds that these opinions are overly restrictive when compared to the MRIs of the claimant's spine that showed only mild to moderate degenerative changes. In addition, the impression from the neurology consult was discogenic low back pain. The claimant was treated conservatively with oral steroids. (Exhibit 16F at pp. 2-3). Furthermore, there is little evidence to support Dr. Leveck's lifting and carrying limitations. The claimant had normal grip strength and normal strength in her upper and lower extremities during both of his physical exams. Similarly, during physical exams [in] 2016 and 2017, the claimant had normal range of motion in her upper and lower extremities, and normal strength. (Exhibit 38F at pp. 2-5; Exhibit 53F). Thus, the undersigned gives Dr. Leveck's opinions little weight.

(AR 22–23.)

For purposes of Shelton's DIB claim, the relevant evidentiary period is from her amended alleged onset date, which is December 18, 2012, to her last insured date, which is a mere two weeks later on December 31, 2012. Although neither the parties nor the ALJ addressed this issue, most of the record evidence about Shelton's physical condition postdates this period. "[P]ost-date-last-insured medical evidence generally has little probative value unless it illuminates the claimant's health before the insurance cutoff date." *Grisier v. Comm'r of Soc. Sec.*, 721 F. App'x 473, 477 (6th Cir. 2018); *see also Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 845 (6th Cir. 2004) ("Evidence of disability obtained after the expiration of insured status is generally of little probative value.").

Dr. Leveck's first examination of Shelton took place in April 2013, roughly four months after her last insured date; at that time, he concluded that Shelton suffered from low back pain and

13

could only occasionally lift and carry up to ten pounds. (AR 909.) Shelton has not addressed the fact that this examination and opinion postdate her date last insured. But even assuming that this evidence sheds light on Shelton's health before December 31, 2012, and thus has some probative value for her DIB claim, the ALJ's analysis of this evidence is supported by substantial evidence. ALJ Grissom adopted an RFC finding that Shelton could perform light work, which requires "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). In so doing, ALJ Grissom afforded Dr. Leveck's opinion "little weight[,]" finding that it was "overly restrictive when compared to the MRIs of [Shelton's] spine that showed only mild to moderate degenerative changes." (AR 23.)

Some of the MRIs in question were taken on December 18, 2012, within the relevant evidentiary period for Shelton's DIB claim. (AR 903–05.) Shelton concedes that "the ALJ is not entirely wrong" in finding that the MRIs "showed only mild to moderate degenerative changes[,]" but argues that her "spinal impairments were more involved and complex than the ALJ's analysis would suggest." (Doc. No. 19-1, PageID# 2819–20.) However, as the Commissioner points out, diagnostic evidence that "reveals mostly mild-to-moderate findings and no significant degeneration" supports an ALJ's determination that a claimant can perform light work. *Downs v. Comm'r of Soc. Sec.*, 634 F. App'x 551, 553 (6th Cir. 2016); *see also Duncan v. Sec. of Health & Human Servs.*, 801 F.2d 847, 853–54 (6th Cir. 1986) (substantial medical evidence supported ALJ's finding that claimant's "medical conditions [were] not so severe that they could be reasonably expected to produce disabling pain" where spinal X-rays indicated only "mild degenerative changes"). Shelton has not pointed to any other evidence in the relevant period that is inconsistent with these MRI findings or would otherwise support greater functional limitations than those set by ALJ Grissom's adopted RFC.

ALJ Grissom further found that there was little evidence to support Dr. Leveck's lifting and carrying limitations because Shelton "had normal grip strength and normal strength in her upper and lower extremities during both of his physical exams." (AR 23.) Dr. Leveck's 2013 exam found that "[s]trength testing of [Shelton's] grips, wrists, and elbows was normal." (AR 908.) He also found that "[s]he was able to stand independently on both lower extremities and squat two-thirds of the way to the floor." (AR 909.) Shelton argues that the ALJ "conflate[d] [her] normal grip strength with her ability to carry and lift weight" (Doc. No. 19-1, PageID# 2820), but she has not cited any authority to support the proposition that normal grip, wrist, and elbow strength are unrelated to lifting ability for purposes of determining a claimant's RFC. Further, her argument that her lifting and carrying limitations "stem[ ] from her cervical pain with radiculopathy[,] as noted by Dr. Leveck[,]" is not supported by the record evidence. (*Id.*) Dr. Leveck did not diagnose Shelton with cervical spine issues in April 2013 and did not attribute her lifting limitations to cervical pain. Indeed, even in 2016, Dr. Leveck attributed Shelton's lifting limitations to her back and knee pain and attributed her separate overhead reaching limitations to her cervical pain. (AR 1272–74.) Shelton's remaining arguments concern evidence from 2016 and 2017, but she has not argued that such evidence is probative of her condition before December 31, 2012. In the absence of such arguments, the Magistrate Judge finds that Shelton has not shown that ALJ Grissom's DIB determination is inappropriate based on his evaluation of Dr. Leveck's 2013 physical examination and opinion.

The relevant evidentiary period for Shelton's SSI claim is much broader, extending from the alleged onset date of December 18, 2012, through the time her application for SSI was pending. This period therefore encompasses Dr. Leveck's second examination, his medical source statement, and other evidence discussed by the parties and ALJ Grissom. Shelton argues that ALJ

Grissom's finding that she had normal range of motion in her upper and lower extremities during physical examinations in 2016 and 2017 is "palpably inaccurate" and "evinces an obvious predilection . . . to focus only on that evidence that supports his RFC determination while ignoring evidence that is favorable to determination of disability." (Doc. No. 19-1, PageID# 2820.)

However, the record shows that ALJ Grissom's finding is both accurate and supported by substantial evidence. During an August 10, 2016 exam at Plateau Wellness Center in Cookeville, Tennessee, Shelton exhibited "normal [range of motion] and strength" in her right and left upper and lower extremities with "no joint enlargement or tenderness" except for "diffuse tenderness" in her right knee. (AR 2225.) During an October 25, 2017 return visit, Shelton exhibited "normal [range of motion] and strength" in both lower extremities with "no joint enlargement or tenderness[.]" (AR 2737.) This evidence is in tension with Dr. Leveck's limited-range-of-motion findings and supports ALJ Grissom's decision to afford Dr. Leveck's opinion little weight.

Shelton's final argument regarding Dr. Leveck is that ALJ Grissom failed to explain why he did not incorporate Dr. Leveck's reaching limitations into Shelton's RFC. But, as explained above, Dr. Leveck attributed Shelton's severe reaching restrictions to her neck and back pain (AR 1274), and the record shows that ALJ Grissom considered MRIs of Shelton's neck and back from 2012 and 2017 to show only mild to moderate degenerative changes that did not warrant Dr. Leveck's limitations (AR 19, 22, 23). These findings support ALJ Grissom's determination that Shelton could perform light work. *See Downs*, 634 F. App'x at 553; *Duncan*, 801 F.2d at 853–54. Contrary to Shelton's arguments, ALJ Grissom therefore provided a "'logical bridge between the evidence and the conclusion that [Shelton] is not disabled.'" *Gilliam v. Astrue*, No. 2:10-CV-017, 2010 WL 2837260, at *3 (E.D. Tenn. July 19, 2010) (quoting *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). While Shelton points to other record evidence documenting tenderness in her

cervical spine (Doc. No. 24), ALJ Grissom considered that evidence (AR 20) and, even if the evidence is considered to be substantial, it is insufficient on its own to warrant reversal. "[I]f substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakely*, 581 F.3d at 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Because substantial evidence supports the decision to afford Dr. Leveck's opinions little weight, Shelton has not shown that ALJ Grissom's assessment of her DIB and SSI claims requires reversal on this ground.

### B. ALJ Grissom's Assessment of Dr. Loftis's Consulting Evaluation

#### 1. Dr. Loftis's Findings and Opinion

Dr. Loftis interviewed Shelton and conducted a psychological evaluation on November 8, 2012, before Shelton's alleged onset date of December 18, 2012, and her last-insured-date of December 31, 2012.[3] (AR 864–68.) He diagnosed Shelton with depressive disorder, anxiety disorder, and PTSD and found the following limitations:

> Understanding and remembering: Ms. Shelton has a mild impairment to understand and recall instructions. Simple, repetitive tasks are not likely to be significantly paired [*sic*].
>
> Concentration, persistence and pace: Ms. Shelton has a mild to moderate impairment in concentration skills, persistence and ability to maintain a competitive pace.
>
> Social Interaction: Ms. Shelton apparently has problems with social interactions. It is believed that she is moderately impaired in social interaction skills necessary to deal with supervisor and coworkers.

---

[3] Neither the parties nor ALJ Grissom addressed the fact that Dr. Loftis examined Shelton before her alleged disability onset date. However, the Sixth Circuit has recognized that evidence "predating the onset of disability, when evaluated *in combination with later evidence*, may help establish disability." *DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x 411, 414 (6th Cir. 2006) (emphasis in original).

17

> Adaptation: Ms. Shelton is moderately limited in her ability to adapt to changes found in most work situations.

(AR 867.)

### 2. ALJ Grissom's Analysis

ALJ Grissom afforded Dr. Loftis's opinion "some weight" and included limitations regarding social interaction and adaptation in the RFC. (AR 23.) However, while Dr. Loftis found that Shelton had "mild to moderate impairment in concentration skills, persistence and ability to maintain a competitive pace" (AR 867), ALJ Grissom ultimately found that Shelton did "not have more than mild limits in concentration . . ." (AR 23). In support of this finding, ALJ Grissom pointed to medical interrogatories completed by Dr. Gross, a consulting psychologist who did not examine Shelton but reviewed her records and opined that she had moderate limitations regarding social interaction and adaptation but no limitations regarding concentration, persistence, or maintaining pace. (AR 23, 2377–84.) ALJ Grissom also gave some weight to an opinion from consultant Jeffrey Scott Herman, SPE, who examined Shelton and found that she "did not have more than mild mental limitations[,]" and gave significant weight to opinions from four agency medical consultants who reviewed Shelton's records and found that she "could perform simple and detailed tasks[.]" (AR 23.)

Shelton argues that ALJ Grissom improperly relied on Dr. Gross to discount Dr. Loftis's opinion because Dr. Gross did not examine her and because Dr. Loftis's opinion is supported by other record evidence. (Doc. No. 19-1.) Shelton's argument is unpersuasive for three reasons. First, she has not explained how the ALJ's finding conflicts with Dr. Loftis's opinion—Dr. Loftis expressed Shelton's impairment in concentration, persistence, and pace as ranging from "mild to moderate" (AR 867) and ALJ Grissom found that her concentration impairment was "mild" (AR 23), which falls within that range. Second, under certain circumstances an ALJ may assign

greater weight to a nonexamining source than to a treating or examining source. *See Miller*, 811 F.3d at 834; *Blakely*, 581 F.3d at 409. ALJ Grissom's decision to do so here is supported by the record. Third, beyond Dr. Gross's opinion, ALJ Grissom identified five other medical and psychological opinions in the record to support his finding that Shelton's concentration is only mildly impaired. (AR 23.) Consulting specialist Herman found, after examining and testing Shelton in 2016, that she "was able to sustain adequate concentration and persistence during the testing" and there was "no indication of any problems in that area." (AR 1284.) And four agency medical and psychological consultants reviewing Shelton's records in 2012 and 2013 found that she could perform "simple and detailed tasks over a full workday and workweek." (AR 112, 125, 144, 162.) ALJ Grissom's finding that Shelton suffered from only mild impairment in her ability to concentrate is therefore supported by substantial evidence. For that reason, even if Shelton is correct that other mental-health evidence in the record supports a finding "that she has moderate limitations in her ability to maintain the concentration, persistence and pace required to sustain gainful employment" (Doc. No. 19-1, PageID# 2825–26), the Court must defer to ALJ Grissom's finding. *See Blakely*, 581 F.3d at 406.

## IV. Recommendation

For these reasons, the Magistrate Judge RECOMMENDS that Shelton's motion for judgment on the administrative record (Doc. No. 19) be DENIED and that the Commissioner's final decision be AFFIRMED.

Any party has fourteen days after being served with this report and recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this report and recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party

who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 12th day of February, 2020.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge